[Civ. No. 14655. First Dist., Div. Two. June 19, 1951.]

MYRON JAMES TAMBLE, Respondent, v. WALLACE K. DOWNEY, as Insurance Commissioner, etc., Appellant.

Edmund G. Brown, Attorney General, T. A. Westphal, Jr. and William M. Bennett, Deputies Attorney General, for Appellant.

Joseph C. Haughey for Respondent.

DOOLING, J.—The Insurance Commissioner appeals from a judgment annulling by writ of mandate an order revoking the license of respondent as a life insurance agent.

The hearing officer's findings, which were adopted by appellant, found that respondent made false and fraudulent representations in the sale of insurance policies or knowingly wrote false answers in the applications for such policies in each of four cases. As to each of these incidents respondent gave testimony before the hearing officer denying the charges of misconduct. The trial judge chose to believe the testimony of respondent and found that none of these charges was true.

Since the decision of our Supreme Court in *Standard Oil Co.* v. *State Board of Equalization*, 6 Cal.2d 557 [59 P.2d 119] our courts are committed to the principle that statewide administrative agencies cannot constitutionally exercise judicial functions. From this it results that due process of law requires a trial de novo in the superior court when the findings of such an agency are there attacked by mandamus *(Drummey* v. *State Board of Funeral Directors*

& *Embalmers,* 13 Cal.2d 75 [87 P.2d 848]), and it is the essence of a trial de novo that the court is "authorized by law to exercise its independent judgment on the evidence" *(Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]). Where that independent judgment is exercised upon conflicting evidence, as here, the findings of the trial court are necessarily conclusive on appeal.

Appellant asserts that respondent's testimony is inherently improbable. Inherent improbability only exists when no reasonable person could believe the testimony. *(People* v. *Robinson,* 87 Cal.App.2d 772, 774 [197 P.2d 776].) An examination of respondent's testimony makes it perfectly clear that it does not fall within this category.

 One charge requires more extended discussion. As to that charge respondent himself gave the only testimony. He testified that in answer to an inquiry by mail purportedly signed by Hazel Moreing he called at the address given on the postcard and there met Luverne Pinning. Mrs. Pinning explained to him that she had sent the card because Mrs. Moreing was a very dear friend and Mrs. Pinning wanted to take out a policy for Mrs. Moreing as a gift to her because Mrs. Moreing had helped her in many ways in the past. Respondent said: "That is very irregular," but "I was persuaded by her sincerity, and I took her application . . . She just literally begged me to take it for her because she wanted to do this lady a favor . . . I think she paid the annual premium at that time." The application was filled out from information given by Mrs. Pinning and Mrs. Pinning signed Mrs. Moreing's name to it. "I didn't realize I was doing anything wrong at that time because this lady was so sincere in her effort to purchase the policy for this very dear friend, and I was persuaded by her, and I did permit her signing the application at that time. Later on I was reprimanded for it . . . The office stated that I was not supposed to take applications for somebody else, signed by another individual . . . I submitted the application through the regular channels . . . All of the applications are inspected by our State Manager, Mr. Joseph. And at that time I was reprimanded for it."

The trial court found that this transaction occurred, as it was bound to do, but concluded that it constituted no violation of the Insurance Code nor any grounds for disciplinary action.

It is to be observed of this testimony that it leaves several facts uncertain. It does not expressly appear whether or not a policy of insurance was issued on this application, although the more probable inference is that none was issued since the testimony is that "all of the applications are inspected by our State Manager, Mr. Joseph. And *at that time* I was reprimanded for it." It does not expressly appear whether or not respondent informed his superiors in the company that Mrs. Moreing's name had been signed by Mrs. Pinning, although the evidence will support that inference since Mr. Joseph according to the testimony must have known that fact at the time of inspecting the application and no other probable way of his learning that fact at that time is apparent. It does not expressly appear whether or not Mrs. Pinning received back the premium paid by her, but we must assume in the absence of proof to the contrary that she did.

There was no finding by the hearing officer or by the court that a policy was issued, that respondent did not inform his company at the time of submitting the application that Mrs. Moreing's name was signed by Mrs. Pinning, or that Mrs. Pinning suffered any financial loss by the transaction. It is worthy of notice that, while there was no written finding on the subject, during the hearing the hearing officer apparently drew the inference that respondent had made a full disclosure to his principal for he said: "The testimony is that he did tell the company, and he was reprimanded by the company." Mr. Joseph who could have established all these facts was present at the hearing but was not called to testify. The trial court was entitled to believe that the transaction was one in which respondent, after informing Mrs. Pinning that it would be "very irregular," permitted himself to be persuaded to take the application from Mrs. Pinning and immediately informed his company of what he had done. So viewed, as we must assume in support of the judgment, the trial court viewed it, the transaction was innocuous and innocent of any wrong. It was as if respondent had said to Mrs. Pinning: "This is very irregular, but I will submit the matter to my company in this way and see if they will issue a policy for Mrs. Moreing as you wish." If the company, knowing all the facts, had chosen to issue a policy on the application it would have been estopped to avoid it on the ground that the application was not in fact signed by Mrs. Moreing. If the company, as we must assume it did,

refused to issue a policy no harm was done to Mrs. Pinning, to Mrs. Moreing or to the company.

On appeal every intendment must be indulged in favor of the judgment, the findings must be liberally construed to uphold rather than to defeat it, and the appellate court must draw from the findings those inferences which will support the judgment. (2 Cal.Jur. Appeal and Error, § 511, pp. 871-873.)

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.