[Civ. No. 15535. First Dist., Div. Two. Sept. 30, 1953.]

A. W. EVJE, Appellant, v. CITY TITLE INSURANCE COMPANY (a Corporation), Defendant; EMMA DE VOTO, Respondent.

James A. Himmel for Appellant.

George V. Curtis for Respondent.

NOURSE, P. J.—The reciprocal actions in the case involve the sole question whether a promissory note of $12,000 payable to defendant and cross-complainant Emma De Voto, further called De Voto, signed in April, 1929, by certain Mohr's Incorporated, further called Mohr's, and secured by a deed of trust on certain tract of land in San Francisco, of

which plaintiff and cross-defendant A. W. Evje, further called Evje, acquired a parcel in November, 1950, has been paid in full so that the deed of trust should be reconveyed or that part of the indebtedness and interest, taxes, et cetera, remain unpaid so that De Voto is entitled to satisfy said obligation by sale of the property owned by Evje. The court gave judgment for De Voto and Evje appeals. Defendant City Title Insurance Company, the trustee under the deed of trust, has agreed by stipulation to be bound by any judgment rendered herein and is not a party to the appeal.

Emma De Voto had no personal interest in or knowledge of the transaction but was merely the nominee, agent or trustee of her brother Stephen Capurro, herein further called Capurro. Capurro had owned the tract, sold it to Mohr's, who planned to parcel it and build houses on the lots, for $19,000 of which $7,000 was in cash and $12,000 in the above note and second deed of trust made payable to De Voto. The deed of trust, received in evidence, contained a provision to the effect that when lots on which houses had been built were sold Mohr's would assign to Capurro notes and deeds of trust given by the purchasers, or at Mohr's option pay cash instead. The purchasers' notes would be accepted by Capurro at their full face value as payment on the $12,000 note but Mohr's guaranteed their payment in full. Capurro would release from the original deed of trust the lots sold for which he had received purchaser's notes and deeds of trust. The note of $12,000 would be cancelled when paid in full by the assigned notes and or cash. Capurro, heard both as adverse witness under section 2055, Code of Civil Procedure, and in his own behalf and cross-examined at length, declared repeatedly under oath that he had received on account of the $12,000 note nothing but the assignment of five purchasers' notes and deeds of trust totaling $9,783.96 a few months after the original transaction in April, 1929, and one payment on March 5, 1930, of $450, a total of $10,233.96 plus some interest payments, so that a balance of $1,766.04 of the principal, interest, et cetera, remained unpaid. The judgment is in accordance with this testimony.

Appellant's only contention is that documentary evidence and admissions of Capurro so strongly show the falsity of Capurro's above evidence and the payment in full of the $12,000 note that the cited evidence could not cause a substantial conflict, or, as we prefer to state it, that the appellate court may reject it, although it was believed by the trial

court. The main circumstances shown at the trial on which appellant relies are the following. At the trial Capurro could not produce the note for $12,000, which circumstance might indicate that he had returned or destroyed it after full payment, although he testified that he had never received it. He had no records of what he had received except eight successive passbooks on the Excelsior Branch of the Bank of America in the name of De Voto, which were received in evidence. According to Capurro's testimony they contained the payments on the assigned purchasers' notes and the payment of $450, nothing else. However in one of these books was found an initial entry of a payment received on April 10, 1929 (prior to the assignments) in the amount of $2,174.65. Capurro denied that this represented a payment on the $12,000 note; he first said that it was carried over from another bankbook and when this proved impossible because the bankbook was the earliest in chronological order he could only say that he did not know what the amount represented. It is further pointed out that Capurro on August 23 and August 31, 1929, signed authorities to reconvey a total of eleven lots although he had received purchasers' notes and deeds of trust only as to five lots and the original deed of trust as to the $12,000 did not require him to release any of his security without receiving such purchasers' deeds of trust. Capurro testified that the reconveyances were not based on any payment or assignment except the five assignments mentioned. No payment or assignment was made by Mohr's after March 5, 1930. Nevertheless Capurro did not take any legal action against Mohr's or any step to sell the one lot not released until it was acquired by plaintiff in 1950. In October, 1940, Capurro and Mohr's made an agreement with respect to a collateral transaction involving one of the lots in which transaction Mohr's advanced $300 to Capurro which Capurro agreed to pay back from the sales price or rent of the property. The letter in which this agreement is embodied does not contain any reference to the amount of $1,700 plus interest long due at that time according to Capurro.

Respondent does not try to explain any of these peculiar circumstances, but takes the position that they only cause a conflict with Capurro's testimony resolved by the trial court in respondent's favor. We have come to the conclusion that on the basis of the authorities respondent's position must be sustained.

■ "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category [citation]. ■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]

■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citations.]" (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176, 183 [195 P.2d 427]; *Cox* v. *City of Los Angeles,* 100 Cal.App.2d 378, 381 [223 P.2d 868].) There are expressions— nearly all dicta—in one form or another to the effect that an appellate court will reject testimony inherently improbable or impossible of belief in some 40 civil cases collected in 2 McKinney's Digest, Appeal and Error, section 1267. However, only in one of these cases did the appellate court actually reject as unbelievable testimony believed by the trier of facts, and that one case, *Lind* v. *Closs* (1891), 88 Cal. 6 [25 P. 972], is a rape case in which the Supreme Court rejected the testimony of the complaining witness so that the subject matter gives it an exceptional character. ■ The absence of decisions rejecting testimony believed in the trial court is understandable when we see that for rejection it is required that the testimony be "wholly unacceptable to reasonable minds" (*Kircher* v. *Atchison, T. & S. F. Ry. Co., supra*); "unbelievable *per se*" (*Lane* v. *Safeway Stores Inc.,* 33 Cal.App. 2d 169, 175 [91 P.2d 160]) such that "no reasonable person could believe the testimony" (*Tamble* v. *Downey,* 104 Cal. App.2d 810, 812 [232 P.2d 543].) It has even been held that an appellate court will not substitute its evaluation of the evidence or its opinion as to the credibility of the witnesses for that of the trial court "even though to some triers of fact the evidence . . . would have seemed so improbable, impossible and unbelievable that a judgment contrary to that . . . on appeal would have inevitably followed." (*Romero* v. *Eustace,* 101 Cal.App.2d 253, 254 [225 P.2d 235].)

■ We cannot say that the testimony of Capurro that he received certain payments and assignments only is *inherently*

improbable or that even in combination with the true facts related it cannot be believed by any reasonable man. The trial judge believed it. Although very strange it is not wholly inconceivable that Capurro with extraordinary slackness and carelessness would have for many years left the whole matter to Mohr's (there was some evidence of Capurro to that effect) and would only have been reminded of the existence of an unpaid balance by the transfer of the lot. Neither would it be wholly inconceivable that Capurro deposited the initial amount of $2,174.65 in the name of his sister, although it did not relate to the real estate transaction, for the same reason for which the deed of trust was made out in her name which reason he did not divulge at the trial, and that after 20 years he no longer knew where the money came from.

Under the authorities cited we cannot disturb the factual decision of the trial court. Appellant's authorities, cases in which it was held that certain evidence did not cause a substantial conflict or did not support the verdict, are not in point because in none of them was evidence rejected on appeal which consisted of direct testimony under oath to the essential facts in dispute by a witness who had the best personal knowledge of the facts to which he testified.

Judgment affirmed.

Goodell, J., concurred.

A petition for a rehearing was denied October 30, 1953.