Filed 11/22/13  Gibbs v. Allstate Ins. Co. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BARBARA GIBBS et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant and Respondent. | F058047<br><br>(Super. Ct. No. 08-226861)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Lloyd L. Hicks, Judge.

Barbara and James Gibbs, in pro. per., for Plaintiffs and Appellants.

MacGregor & Berthel, Gregory Michael MacGregor, Deborah A. Berthel, and Sangeeta A. Madhok for Defendant and Respondent.

-ooOoo-

After a fire damaged the home of Barbara and James Gibbs (appellants), a dispute arose between appellants and their insurer Allstate Insurance Company (Allstate). Appellants sued Allstate for breach of contract and breach of the implied covenant of good faith and fair dealing.  The case went to trial, and a jury reached a verdict in favor of Allstate.

Appellants appealed in propia persona. After initiating this appeal, appellants filed for bankruptcy, and we ordered this matter stayed by order dated June 15, 2011. Appellants subsequently informed this court that a bankruptcy court confirmed their reorganization plan, and we lifted the stay on July 9, 2013. We now affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORIES

Appellants bought their house in Porterville in January 2005. The house was around 80 years old. They began remodeling, adding exterior lights, removing a dividing wall in the kitchen, and remodeling the bathrooms, among other projects. They hired a handyman, Luis Vargas, to work on the remodeling projects. There was a pool house (also referred to as a guest house) on the same property.

On the evening of December 30, 2006, there was a house fire, which started in the fireplace in the living room. Allstate adjustor Erwin Kramer went out to meet appellants in January 2007. Paul Jacobs, a contractor suggested by Allstate, started clean up and repairs on the fire-damaged part of the house. At the same time, appellants continued remodeling projects unrelated to the fire damage.

By the summer of 2007, appellants had become concerned about the slow progress of repairs. There were also issues related to the electrical system, hardwood flooring, roof, and fireplace. For example, appellants maintained that Allstate should pay to repair or replace the fireplace, which they believed was damaged by the fire. Allstate, however, determined that the fireplace was not covered by the policy because it was the cause of the fire. According to Allstate, the fireplace sustained damage from age deterioration before the fire, and this preexisting damage caused the fire. In total, Allstate paid $232,000 on appellants' claim.

Appellants filed a complaint against Allstate on February 7, 2008, alleging that the insurance company failed and refused to make payment of all the benefits due under their policy and that it acted in bad faith. They also sued Paul Jacobs Construction, Inc., which apparently settled with appellants in early 2009.

2.

Jury trial began on April 6, 2009. Appellants presented nine witnesses, and Allstate presented four witnesses. Appellants' position was that Allstate acted unreasonably and still owed them money for the fireplace and some hardwood flooring. They also argued that Allstate breached the insurance contract by paying money on the policy to a third-party administrator rather than to appellants directly.

Allstate responded that it paid for all damages covered under the policy. In addition, Allstate asserted an affirmative defense. It alleged that, at the time of the fire, appellants were already living in their pool house while they were remodeling the main house, and they did not incur any additional living expenses (ALE) by living in the pool house after the fire. Appellants, however, received $24,000 in ALE payments from Allstate to live in the pool house. Allstate argued that appellants' claim for ALE was a misrepresentation of material fact, and they were, therefore, barred from recovery under the policy.

The case was submitted to the jury on April 13, 2009. The jury reached a defense verdict the next day. The second question on the jury verdict form read: "Do you find that [appellants] made material misrepresentations with respect to their claim under the policy issued to them by [respondent] Allstate Insurance Company?" The jury unanimously voted, "Yes." Consequently, the insurance contract was void, and appellants were barred from recovering anything from Allstate. (See *Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1418-1419 [plaintiff's intentional and material misrepresentation is defense to breach of contract cause of action since plaintiff's conduct voided insurance contract].) Judgment on the jury verdict was entered on April 20, 2009, and this appeal followed.

### DISCUSSION

We begin with a very brief review of appellate practice. First, our role is a limited one. The appellate court decides only questions of law; questions of fact are the province of the trial court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Second, generally a claim of

error must be raised in the trial court in order to preserve the issue for appeal. (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1363 [""""An appellate court will ordinarily not consider procedural defects or erroneous rulings … where an objection could have been, but was not … presented"""""].) Third, the trial court's judgment is presumed correct, and the burden is on the appellant to show affirmatively that an error was committed. (*Kearl v. Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1051.) Fourth, the appellant must also demonstrate prejudice. "Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred.… [¶] … When the trial court commits error … , reversal can generally be predicated thereon only if the appellant can show resulting prejudice, and the probability of a more favorable outcome, *at trial* …." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.) Finally, "[p]ro. per. litigants are held to the same standards as attorneys." (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

Appellants contend that (1) Vargas committed perjury; (2) Allstate's attorney engaged in misconduct by vouching for the credibility of witnesses Vargas and Jacobs and by arguing that appellants committed fraud against Allstate; (3) Allstate's expert made false statements; and (4) the court erred in instructing the jury. Other arguments are more difficult to discern. After reviewing the record, we conclude there is no basis for reversing the jury verdict.

## I.     *Alleged perjury*

Vargas worked on many construction projects for appellants; he performed work at their home as well as at rental properties they owned. Vargas testified that, at the time of the fire, the kitchen had been gutted. There were no cabinets or appliances, only "[f]our walls and a roof." The house had one full bathroom and another half bathroom with a shower but no tub. Vargas said that both toilets had been removed and there was no functional bathroom in the house. His impression was that appellants were already

4.

staying in the pool house before the fire. Vargas explained, "When I show up to work in the morning at the site, they would both be there [in the pool house] making breakfast or, you know, normal everyday living. There was nothing else at the other [main] house other than their bed."

James Gibbs testified that the half bathroom functioned at the time of the fire, and they were living in the main house. He also testified that the kitchen had cabinets and a working stove and refrigerator. At trial, Barbara Gibbs denied that both toilets had been removed before the fire. Allstate's attorney, however, impeached this testimony with Barbara's deposition, in which she had said that both toilets had already been ripped out and they were using the bathroom in the pool house.[1] She also said in her deposition that the cabinets in the kitchen had been removed. Kramer, who went to the house on January 3, 2007 (four days after the fire), testified that, at that time, there were no cabinets in the kitchen and he did not notice either a stove or a refrigerator. Jacobs testified that, on his second visit to the house (which occurred in mid-to-late January 2007), he observed no shower in the half bathroom, and the kitchen had no cabinets and no flooring.

Appellants contend that the "judgment was found for Allstate Insurance Company because of the perjury of Luis Vargas ...." We are not persuaded.

"The reversal of a judgment upon the ground of asserted perjury cannot be ordered except in those cases where the testimony is such as to shock the moral sense of the court. *The testimony must be incredible*. Where such testimony is not inherently improbable it is

_____

[1]In their reply brief, appellants claim that Allstate's attorney "lied" by using Barbara's deposition testimony in this way because she later, in that same deposition, corrected this statement. Barbara's deposition transcript is not in the record on appeal, so we have no way of verifying whether she later corrected her deposition. In their reply brief, appellants provide what they represent to be a quote from that deposition. If Barbara did correct her deposition response as appellants now claim, their attorney could have used the correction to rehabilitate on redirect, but he did not do so.

the exclusive province of the jury to determine the truth of the matter in question." (*Hicks v. Ocean Shore R.R.* (1941) 18 Cal.2d 773, 780, italics added.)

Here, we cannot say that Vargas's testimony was incredible. Although appellants argue that Vargas was lying, the jury apparently believed Vargas and did not believe appellants on the factual issue of whether they were already living in the pool house at the time of the fire. It is not our role to reweigh credibility determinations. "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citations.]' [Citations.]" (*Evje v. City Title Ins. Co.* (1953) 120 Cal.App.2d 488, 492.)

We recognize that appellants allege Vargas lied because he "had a bone to pick" with them because they reported him to the Contractors State Licensing Board (Board). This does not change the rule that questions of fact, including credibility determinations, are the exclusive province of the jury. The jury was well aware of the fact that appellants reported Vargas to the Board as both Vargas and James Gibbs testified about it.

For the same reasons, appellants' allegations that Jacobs, Kramer, and Allstate's expert witness made false statements are unpersuasive on appeal. Credibility is for the jury, not an appellate court, to decide.

## II.     *Attorney's conduct*

In closing argument, Allstate's attorney argued that appellants did not prove their case. He said, "What have they produced? I think it's fair to say that they've produced accusations, some anger, some frustration, some dissatisfaction, references and stories about cursing and complaints. Maybe even an outright lie or two, to be perfectly blunt about it. And now we have righteous indignation from the plaintiffs."

Regarding the witness Jacobs, Allstate's attorney stated, "[H]e did a heck of a job. He did such a good job I didn't even cross-examine him. I don't know if anybody noticed

6.

that, but that doesn't happen very often." He also commented, "Now, I don't know about Mr. Vargas. Mr. Vargas seemed like he knew what he was talking about." Later, he said, "[M]aybe Mr. Vargas has an ax to grind. Maybe he's here to put a dagger in. I didn't hear it. You're supposed to judge that. But remember this when you judge him. His testimony is consistent with Kramer, Jacobs, and somebody else."

Now, appellants contend that Allstate's attorney "expressed his personal opinion of the credibility of the witness[es], Luis Vargas and Allstate's Preferred Contractor Paul Jacobs" and "expressed his personal opinion as to the culpability of the Plaintiffs/Appellants" and "prejudiced the Gibbs[es] in the eyes of the jury."

"'Generally, to preserve for appeal an instance of misconduct of counsel in the presence of the jury, an objection must have been lodged at trial.' [Citation.] In addition to objecting, a litigant faced with opposing counsel's misconduct must also 'move for a mistrial or seek a curative admonition' [citation] unless the misconduct is so persistent that an admonition would be inadequate to cure the resulting prejudice [citation]." (*Cassim v. Allstate Ins. Co*. (2004) 33 Cal.4th 780, 794-795.)

Appellants' trial attorney did not object to Allstate's attorney's arguments, in either his opening or closing arguments. As a result, appellants' claims of alleged attorney misconduct have been forfeited.

Further, "[c]onsiderable latitude is … accorded to attorneys in presenting their arguments to juries. An attorney has a right to reason fairly from the evidence adduced that a witness has either misstated the facts or that he has sworn falsely. He may also express his opinion based upon fair deductions from the evidence or from reasonable inferences therefrom." (*Rogers v. Foppiano* (1937) 23 Cal.App.2d 87, 94-95.) We do not see anything in Allstate's attorney's closing argument that exceeds this considerable latitude.

Appellants also argue that Allstate's attorney engaged in misconduct by presenting Vargas as a witness, alleging "what Allstate and [its attorney] did was extrinsic fraud."

7.

As they acknowledge, however, fraud is extrinsic only "when it deprives the unsuccessful party of opportunity to present his case to the court," citing *Harkins v. Fielder* (1957) 150 Cal.App.2d 528, 535. Here, appellants were not deprived of an opportunity to present their case in court. To the contrary, the appellants had a multi-day jury trial and called nine witnesses. Under these circumstances, they cannot claim extrinsic fraud. (*Westphal v. Westphal* (1942) 20 Cal.2d 393, 397; see also *Hammell v. Britton* (1941) 19 Cal.2d 72, 82 ["equitable relief from a judgment arising out of a contested action will not be granted merely because it was obtained by perjured testimony or forged documents; that constitutes intrinsic fraud against which defense may be made at the trial. False or perjured testimony is not extrinsic fraud."].)

### III.  *Jury instructions*

Appellants argue that the court erred in failing to give proper and required instructions to the jury and erred by giving the jury confusing instructions. This argument fails because the parties jointly submitted the jury instructions. In other words, appellants (along with Allstate) requested the jury instructions they now claim were confusing and incomplete.

"The doctrine of invited error bars an appellant from attacking a verdict that resulted from a jury instruction given at the appellant's request.… [¶] The invited error doctrine applies 'with particular force in the area of jury instructions. Whereas in criminal cases a court has strong sua sponte duties to instruct the jury on a wide variety of subjects, a court in a civil case has no parallel responsibilities. A civil litigant must propose complete instructions in accordance with his or her theory of the litigation and a trial court is not "obligated to seek out theories [a party] might have advanced, or to articulate for him that which he has left unspoken." [Citations.]' [Citation.]" (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653.)

Appellants are barred from challenging the jury instructions under the invited-error doctrine; consequently we do not address this argument further. As an aside, we observe

appellants' assertion that they "were wrongly convicted of fraud" is incorrect because they were not convicted of fraud. This was a civil trial, not a criminal one.

## IV.    *Substantial evidence*

Appellants assert that "the jury findings are not supported by any evidence, except the perjury of Allstate's witness, Luis Vargas." This argument fails because Vargas's testimony was evidence at trial. Indeed, throughout their appellate brief, appellants dispute the testimony of various witnesses and assert there was no evidence to support the testimony. For example, they assert, "There is **no** evidence that the job was shut down for any framing that was not to code, this was made up by Jacobs." Testimony by Jacobs to that effect, however, is evidence. They fail to recognize that testimony, in itself, is evidence. (Evid. Code, § 140; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of witness, even party to lawsuit, may constitute substantial evidence].)

To the extent they argue that there was no substantial evidence to support the jury's verdict, we are not persuaded. "'[W]hen a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury.' [Citations.] We cannot reweigh the evidence, but must resolve all conflicts in favor of the prevailing party. [Citation.] 'When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' [Citation.] We defer to the trier of fact on issues of credibility. [Citation.]" (*Steele v. Youthful Offender Parole Bd*. (2008) 162 Cal.App.4th 1241, 1251-1252.)

In this case, Vargas testified that, before the fire, there was no functioning bathroom or kitchen in the main house and his impression was that appellants were staying in the pool house. As Allstate points out, Vargas's testimony was not the only evidence. Kramer and Jacobs both observed shortly after the fire that the kitchen had no cabinets or appliances, and Jacobs observed that there was no shower in the half bath.

9.

Barbara Gibbs said in her deposition that there were no toilets in the main house and no cabinets in the kitchen before the fire. This was evidence from which the jury could infer that appellants were already living in the pool house before the fire, and the jury could therefore determine that appellants made a material misrepresentation when they submitted a claim for *additional* living expenses to continue to live in the pool house after the fire.

## V.    *Remaining arguments*

Appellants appear to raise other issues. For example, they mention "Unfair or Deceptive Practices Against Senior Citizens," a claim that was not presented to the jury. Their brief, however, contains many references to rules without any clear argument connecting the rules to the facts and record in this case. "As a general rule, '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.' [Citations.] It is the [appellant's] duty … to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' [Citation.]" (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) All remaining issues mentioned but left unexplained or unsupported in appellants' opening brief are waived.

Appellants also filed a reply brief on September 9, 2013, raising three new issues: (1) an argument supporting their claim for ALE, (2) a contention of misuse of the discovery process, and (3) an allegation of postjudgment libel by Allstate's attorney. We do not consider arguments made for the first time in a reply brief. (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party."].) In any event, appellants' first two issues relate to questions of fact and credibility, which are the province of the trial court, not the appellate court. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) As to the third issue, appellants assert that Allstate's law firm described the jury trial and

verdict on its website, and in doing so, defamed them.  We observe that any conduct alleged to have occurred *after* trial could have no effect on the trial, and therefore, appellants' allegation of libel is irrelevant to this appeal.

### *DISPOSITION*

The judgment is affirmed.  Costs are awarded to Allstate.

_____
Oakley, J.*

WE CONCUR:


_____
Kane, Acting P.J.


_____
Franson, J.


_____

*Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.