Filed 4/30/14  In re Tey. T. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re TEY. T., et al., Persons Coming Under the Juvenile Court Law. | B250449 (Los Angeles County Super. Ct. No. CK60784) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.C., et al., <br><br> Defendants and Appellants. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Zeke Zeidler, Judge. Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant E.C.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant K.M.

Tarkian & Associates, Arezoo Pichvai, for Plaintiff and Respondent.

_____

K.M and E.C. (mother) appeal from the dependency court's order declaring three of their children, Tey., Sav., and Sas., dependents of the court under Welfare and Institutions Code section 300,[1] subdivisions (b), (d), and (j), and removing them from parental custody under section 361, subdivision (c)(1) or (c)(4). K.M. contends the court's jurisdictional findings based on his now-adult stepdaughter's allegations of sexual abuse are not supported by substantial evidence. Mother contends the court denied her due process by amending the petition, that the allegations of the amended petition are facially insufficient, and that substantial evidence does not support the court's jurisdictional findings. Mother further contends the court erred in removing Sav. and Sas. from her custody, and the court failed to consider reasonable alternatives to removal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has six children. Tra., mother's eldest daughter, is now 20 years old. Mother's two boys are Tre., 19, and Thi., 17. The youngest girls are Tey., 15, Sav., 7, and Sas., 3. K.M. has lived with all six children, but is only the biological father to Sav. and Sas. The other children's biological father (T.T.) is not a party to this appeal.

The Los Angeles County Department of Children and Family Services (Department) filed the current petition in December 2012, alleging that the four children remaining in the home (Tre.,[2] Tey., Sav., and Sas.) were at risk of physical harm or sexual abuse based on K.M.'s actions raping Tra. over a two-year period beginning when she was 16, mother's awareness of the sexual abuse, mother's failure to protect the

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] On May 15, 2013, the court dismissed Tre. from the petition because he had turned 18.

children, and mother's failure to provide the children with adequate amounts of food as a form of punishment.

The current case is the family's third dependency proceeding. The Department filed the first petition in June 2006. Mother's younger son, Thi., was nine at the time and had been hospitalized twice for severe emotional disturbance and diagnosed with a number of mental health disorders. Mother had initially entered into a voluntary family maintenance contract, but then refused to cooperate and would not allow mental health professionals to assist Thi. The Department filed a petition after Tra., Tre., and Tey. reported suffering both physical and mental abuse. The dependency court detained the children from mother and released them to T.T. The children had difficulties living with T.T and eventually transitioned to foster care. Thi. continued to suffer from mental health issues, and in December 2006, he was placed in a restrictive level 12 group home after a mental health hospitalization. The court sustained the petition on April 3, 2007, but in the interim, mother had given birth to Sav. in July 2006. Mother did not cooperate with the Department's requests to see Sav., and when the social worker attempted to visit mother and K.M., the home was vacant and there was an eviction sign in the window. The Department filed a petition on behalf of Sav., obtained a protective custody warrant, located Sav., and placed the infant in foster care. On May 15, 2007, the court sustained a supplemental petition filed on behalf of Sav. By July 2007, four of the siblings were placed with the maternal aunt, and both mother and K.M. were participating in reunification services. After enrolling in various parenting classes, Mother and K.M. regained custody of all five children in January 2008, and the team providing mental health wraparound services to Thi. was confident that mother would ensure continued mental health services for him. The court terminated jurisdiction in July 2008.

The family again came to the Department's attention in February 2011, when mother left Thi. with T.T., who was unable to care for the boy. Thi. reported that he and his siblings had not been to school in over four years, and mother and K.M. did not provide enough food to the family. The Department was unable to locate the other siblings, but filed a petition in May 2011 naming all six children. The court issued

protective custody warrants for the missing children and arrest warrants for mother and K.M.

The Department was unable to locate the family until March 2012, when K.M.'s mother called the Department to report that the children had been dropped off at her home. The Department interviewed the children, who reported that they did not have contact information for their parents, but that Thi.'s allegations were untrue. They claimed to be properly homeschooled and denied any abuse. Mother and K.M. entered into a voluntary contract with the Department, and the petition was dismissed in June 2012. Part of the contract was an agreement to enroll the children in school or in a certified homeschooling program.

In August 2012, Tra. filed a police report with the Palmdale Sheriff's Department alleging K.M. had raped her on multiple occasions. In the police report, Tra. claimed that the rape occurrences began when she was 16 and continued until May 2012. They took place when mother was not home. In July 2012 and again in October 2012, the Department received reports that Tra. had disclosed she had been sexually abused by K.M. In both instances, social workers interviewed family members and concluded the reports were unfounded.

The Department received another report about the family on December 16, 2012, when Tre. and Tey. sought to leave the home to live with T.T. Four days later, T.T. dropped Tra., Tre., and Tey. off at a Los Angeles police station, stating he was unable to care for the children and that mother was still receiving financial assistance for them. Tre. and Tey. reported going to mother's home earlier that day to obtain a letter from mother permitting T.T. to care for them, but she refused to let them into the house.

At the adjudication hearing, Tra. testified that K.M. first sexually abused her when Sas. was an infant. He sent the other siblings to the park, and when Tra. was putting Sas. down to sleep, "he was in there, and he came and got close to me. And, basically -- he did oral to me and, like, climbed on top of me." Afterwards, she told Tey., but did not tell mother. On at least two occasions, K.M. penetrated her with his penis. The abuse

4

ended when she was placed in foster care as part of the 2011 case. She did not tell anyone in the Department about the abuse because she was embarrassed.

Tey. testified that Tra. told her of the abuse, but she never witnessed K.M. sexually abusing Tra. She said she originally denied knowing of any abuse because she did not want to believe it. Mother testified she never left Tra. alone with K.M. and did not believe that K.M. had abused Tra. as Tra. alleged.

The court found no evidence that mother had been told of the abuse, but also noted that "the children didn't really have a chance to express what was going on to the mother. She discouraged any of that sort of communication." The court amended the sex abuse allegations under subdivisions (b), (d), and (j) to read as follows: "[K.M] sexually abused the children's now adult sibling [Tra.], for two years since the sibling was sixteen years old by repeatedly forcibly raping the sibling by placing [K.M.'s] penis in the sibling's vagina. [Mother] does not believe the allegations ~~failed to protect [Tra.] when she knew of [K.M.'s] sexual abuse of the sibling. The mother allowed [K.M.] to reside in the children's home and to have unlimited access to [Tra.].~~ Such sexual abuse of the sibling by [K.M.] and [mother's] disbelief ~~failure to protect the sibling~~ endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger, sexual abuse and failure to protect." The court sustained the amended sex abuse allegations.

The court also struck language that mother denied food to the children, but added allegations that mother "failed to adequately provide for the children . . . ." Because the amendments arguably broadened the allegations regarding mother's failure to provide, the court gave mother an opportunity to present additional evidence on the issue, which she did. The court sustained the allegations that mother failed to adequately provide for the children and ordered the children removed from parental custody. Both mother and K.M. appealed.

## DISCUSSION

The dependency court properly exercised jurisdiction over Tey., Sav., and Sas. based on the evidence supporting the petition allegations that K.M. repeatedly raped his now-adult stepdaughter, Tra., over a period of two years, and mother did not believe her daughter's allegations of rape. We conclude that the petition allegations are sufficient to state a cause of action, and substantial evidence supported the court's exercise of jurisdiction and the court's removal order.

Because the court's exercise of jurisdiction on the sex abuse allegations was proper, we decline to consider mother's arguments relating to the allegations of failure to adequately provide for the children.[3] "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

### A. *The petition allegations are facially sufficient to state a cause of action.*

Mother contends her disbelief that any sexual abuse had taken place is insufficient to support jurisdiction because the petition lacks any allegations about the causal connection between her disbelief and harm to the children. We disagree.

When reviewing the facial sufficiency of a dependency petition, the court construes the facts in favor of the petition. (*In re Janet T.* (2001) 93 Cal.App.4th 377, 386; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1133.) A parent has a fundamental

---

[3] In her briefing, mother argued that the court erred by (1) amending the petition allegations, (2) denying mother's motion to dismiss for failure to state a cause of action, and (3) sustaining the petition allegations without substantial evidence.

due process right to notice of "'the specific factual allegations against him or her with sufficient particularity to permit him or her to properly meet the charge.' [Citation.]" (*In re Fred J.* (1979) 89 Cal.App.3d 168, 175, italics omitted.) "If the parent believes that the allegations, as drafted, do not support a finding that the child is 'within' one of the descriptions of section 300, the parent has a right to bring a motion 'akin to a demurrer.' [Citation.]" (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1037.) A facially sufficient petition "does not require the pleader to regurgitate the contents of the social worker's report into a petition, it merely requires the pleading of essential facts establishing at least one ground of juvenile court jurisdiction." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 399-400 (*Alysha S.*).)

The petition initially alleged mother was aware K.M. sexually abused her oldest daughter, Tra., mother continued to permit K.M. to reside in the home with unlimited access to Tra., and mother's awareness and failure to act placed the younger siblings at risk of physical harm or sexual abuse. The evidence presented during the adjudication hearing did not demonstrate mother's *awareness* of any sex abuse, but it did show that when mother was informed of Tra.'s allegations, she *disbelieved* them. The court amended the petition to allege that mother's disbelief placed the younger siblings at risk of physical harm or sexual abuse.

Mother's disbelief of her daughter's allegations against K.M. suffices as the causal connection between K.M.'s past abuse of Tra. and the risk of future harm to Tey., Sav., and Sas. A parent's disbelief of a child's report of sexual abuse is a valid basis for exercising jurisdiction over the siblings of an abused child. (*In re D.G.* (2012) 208 Cal.App.4th 1562, 1570 (*D.G.*); *In re Katrina* W. (1994) 31 Cal.App.4th 441, 447 (*Katrina W.*).) In *D.G.*, the appellate court affirmed orders finding jurisdiction over the father's older stepdaughter and younger biological daughter based on "substantial evidence that (1) Father sexually molested [the stepdaughter]; (2) Mother denies that the abuse occurred; and (3) Father's abuse and Mother's denial place both [stepdaughter] and [biological daughter] at risk of harm." (*D.G.*, *supra*, at p. 1570.) Where a father has molested one stepdaughter and the mother denies or disbelieves that such molestation

took place, jurisdiction is supported under subdivisions (b), (d) and (j) "based on a substantial risk that [other minor girls in the household] will suffer serious physical harm as a result of the failure or inability of Mother to adequately protect them." (*Id*. at p. 1573.)  The *D.G.* court relied on an earlier case, *Katrina W.*, which upheld jurisdiction as to both parents where the father had molested his daughter and the mother was in denial of molestation.  The *Katrina W.* court reasoned that the mother's disbelief the father had done anything improper supported a finding of risk because other reports of future abuse might also be ignored by the mother.  (*Katrina W.*, *supra*, at p. 447.)

Mother relies on the holding in *Alysha S., supra,* 51 Cal.App.4th 393, to argue that an allegation of inappropriate touching, without allegations of additional facts demonstrating that the minor is likely to suffer serious physical harm, is insufficient to support jurisdiction under subdivision (b) of section 300.  (*Id.* at pp. 398-399.)  Contrary to the reasoning in *Alysha S.*, more recent cases uphold jurisdiction on the grounds that sexual abuse of one sibling over a period of time places the siblings of the abuse victim at risk of substantial harm under subdivisions (b), (d), and (j).  (See, e.g., *In re I.J.* (2013) 56 Cal.4th 766 (*I.J.*) [affirming jurisdiction over male siblings of abuse victim under subdivision (j)]; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968, fn. omitted [directing lower court to sustain petition under subdivisions (b), (d), and (j) because "sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling"]; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1345-1347 [affirming jurisdiction under subdivisions (b) and (d) because "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior"].)  Consistent with these cases, we conclude that the allegations of sexual abuse and mother's disbelief are sufficient to state a cause of action under subdivisions (b), (d), and (j) of section 300.

**B.**     *Substantial evidence supports the dependency court's jurisdictional finding that the children are at substantial risk of harm.*

Viewed in the light most favorable to the court's jurisdictional findings, there is substantial evidence that K.M. sexually abused Tra., that mother disbelieved such abuse had occurred, and that K.M.'s abuse and mother's disbelief put Tey., Sav., and Sas. at substantial risk of physical harm or sex abuse.

Subdivision (b) of section 300 supports dependency court jurisdiction if a child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child. Subdivision (d) of section 300 supports dependency court jurisdiction when a "child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent . . . ." Subdivision (j) of section 300 provides a basis for dependency court jurisdiction if "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." In determining jurisdiction under subdivision (j), the court must "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j); *In re Maria R.* (2010) 185 Cal.App.4th 48, 64, disapproved of on another ground by *I.J., supra*, 56 Cal.4th at pp. 778-779.) Jurisdiction is warranted when a child is at *risk* of abuse, not only when the child has actually been abused. (See § 300, subds. (a), (b), (d), and (j).) We apply the substantial evidence standard of review when considering a challenge to the sufficiency of the evidence supporting the court's jurisdictional findings. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most

9

favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

In this case, Tra. reported to social workers and testified that K.M. had repeatedly raped her over the course of two years beginning when she was 16 years old, and the court found her testimony to be credible. K.M. argues that Tra.'s testimony was inherently improbable because K.M. has a large scar on his pelvis and is missing one testicle, but Tra. answered "no" when asked whether there was anything distinct about father's "private parts" that stood out to her. (See *Evje v. City Title Ins. Co.* (1953) 120 Cal.App.2d 488, 492 [for doctrine of inherent improbability to warrant reversal of a judgment resting on witness statements, "there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions"].) Nothing in the record supports K.M.'s argument that Tra.'s testimony is "inherently improbable." Her response to the question of whether there was anything distinct about K.M.'s anatomy does not demonstrate that her version of events was physically impossible, and a court would need to make certain inferences to find false her testimony about K.M.'s sexual abuse. She was never asked whether she had viewed K.M.'s "private parts" in circumstances or lighting that made it impossible for her to not notice the presence of a scar or the absence of a testicle. It would be reasonable for the court to still find Tra. credible given her detailed and consistent testimony, and we decline to usurp the court's role as fact-finder "[u]nder the guise of inherent improbability . . . ." (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1150.)

Mother does not challenge the trial court's findings that K.M. sexually abused Tra., but rather contends that the jurisdictional findings are erroneous because there is no evidence any of the children have suffered any physical harm. She also contends that because she did not know or have any reason to know of the abuse, her disbelief is insufficient to support a jurisdictional finding against her.

We reject mother's argument that the court lacks jurisdiction because the Department presented no evidence that the minors had suffered actual harm. "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court

10

can assume jurisdiction." (*I.J., supra*, 56 Cal.4th at p.773.) "[A]berrant sexual behavior directed at one child in the household places other children in the household at risk, and this is especially so when both children are females." (*Los Angeles County Dept. of Children & Family Services v. Superior Court*, *supra*, 215 Cal.App.4th at p. 970.) Numerous courts have held that sexual abuse of one child constitutes substantial evidence of risk to the child's siblings who remain in the household, even if the other child is a different gender or age or is a half sibling. (See *id.* at pp. 968-970 [reviewing cases sustaining petition allegations as to male and female siblings and half-siblings based on abuse of one child in household].) In *I.J.*, the California Supreme Court affirmed the trial court's jurisdictional findings as to the younger male siblings of a 14-year-old girl who had been sexually abused by her father for three years, even though there was no evidence or claim that the father had "sexually abused or otherwise mistreated his three sons, and the evidence indicates that they had not witnessed any of the sexual abuse and were unaware of it" before the dependency proceeding began. (*I.J., supra,* 56 Cal.4th at p. 771.) Acknowledging disagreement among the Courts of Appeal, the California Supreme Court concluded that a finding of sexual abuse of a child of one gender may be sufficient to support a finding of risk as to children of a different gender. "'When a parent abuses his or her child, . . . the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody. [Citation]' [Citation.]" (*Id.* at p. 778.) Here, the court sustained petition allegations supporting jurisdiction over three female children living in the same household, a decision that is supported by the facts of this case and the case law involving sex abuse allegations.

We also reject mother's argument that the court erred in asserting jurisdiction based on evidence mother disbelieved Tra.'s allegations of sex abuse. Mother relies heavily on the argument that because two social workers disbelieved Tra.'s allegations of abuse, mother cannot be faulted for her disbelief. Tra. first reported in July 2012 that K.M. had sexually abused her for two years and the abuse ended when the children were detained in 2011. Three different social workers investigated the purported abuse. The

11

social workers conducting investigations in July and October of 2012 concluded that Tra.'s allegations were unfounded. The third social worker found the allegations believable and initiated the proceedings that are the subject of the current appeal. While there are arguable inconsistencies in Tra.'s reports and testimony, the trial court resolved the ultimate credibility issue in favor of Tra.'s version and that determination is binding on appeal.

As discussed earlier in this opinion, a mother's disbelief that her child has been sexually abused can support a jurisdictional finding based on the theory that there is substantial risk that she will fail to protect the child or her siblings from similar abuse in the future. Once the court found Tra.'s testimony regarding abuse credible, there was sufficient evidence to sustain its jurisdictional findings with respect to Tey., Sav., and Sas. (*Los Angeles County Dept. of Children & Family Services v. Superior Court, supra,* 215 Cal.App.4th at pp. 965, 966, 968.)

**C.**     ***Substantial evidence supports the dependency court's order removing the minors from both parents.***

Mother contends the court erred when it removed Sav. and Sas.[4] from her custody, because she was willing to abide by a court order prohibiting K.M. from residing in her home. Mother argues that there was no evidence that removal was necessary for the protection of the children, and that the court did not consider reasonable alternatives.

Before a child can be removed from parental custody, the Department must prove, by clear and convincing evidence, "[t]here is or would be a substantial danger to [her] physical health, safety, protection, or physical or emotional well-being if [she] were returned home" and removal is the only reasonable means of protecting her physical health. (§ 361, subd. (c)(1).) A court may also remove a child from parental custody after finding by clear and convincing evidence that "[she] is deemed to be at substantial

---

[4] Mother does not contend the court erred in ordering Tey. to remain removed from her custody.

risk of being sexually abused . . . , and there are no reasonable means by which [she] can be protected from . . . a substantial risk of sexual abuse without removing [her] from . . . her parent . . . ." (§ 361, subd. (c)(4).) "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus . . . is on averting harm to the child. [Citations.]'" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.) We review a dispositional order removing a child from a custodial parent for substantial evidence. (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

There was sufficient evidence that Sav. and Sas. were at substantial risk of being harmed if they were returned to mother's custody. Mother's argument rests on her promise to discontinue living with K.M. if the court sustained the sex abuse allegations against him. However, mother has a less than stellar record of keeping her promises, and her earlier actions provide sufficient evidence to support the court's findings that Sav. and Sas.'s removal was necessary for their protection.

The record includes evidence that mother previously promised to take corrective action, but then failed to follow through on such promises. In the 2006 dependency case, mother had initially entered into a voluntary family maintenance contract, but then refused to cooperate and would not allow mental health professionals to assist Thi., who had serious mental health problems. The record also contains no evidence that she continued with the mental health services that were being provided when the court terminated jurisdiction over the matter in 2008, although the Department clearly contemplated that such services would continue. In the case plan for the 2011 dependency proceeding, mother had agreed to enroll the children in school or a certified homeschooling program, but then failed to do so.

Also, the family has a documented history of failing to cooperate with efforts to protect the younger children in the family. Sas. was born while the 2006 dependency case was pending, but mother refused to permit the Department to visit Sas. In the 2011 dependency proceeding, the court had to issue protective warrants for all the children except for Thi., who was already in protective custody. The family managed to evade the Department for almost a full year, and the Department only detained the children after

13

their paternal grandmother called to advise the Department that mother and K.M. had dropped the children off at her home. The parents left no contact information with their children.

Mother does not believe K.M. sexually abused her older daughter, she has been unwilling or unable to provide adequate mental health support for Thi., and she has a documented history of attempting to avoid or evade Department scrutiny. When all these circumstances are considered together, there is substantial evidence to support the court's determination that it was necessary to remove Sav. and Sas. from mother's custody and the Department had met the criteria of section 361(c)(1) or (4) by clear and convincing evidence.

## DISPOSITION

The dependency court's jurisdictional findings and dispositional orders are affirmed.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.                    MINK. J. *

---

*       Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14