Filed 6/5/14

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| E. J. FRANKS CONSTRUCTION, INC., <br><br>     Plaintiff, Cross-defendants and <br> Respondents, <br><br>        v. <br><br> BHUPINDER K. SAHOTA et al., <br><br>     Defendants, Cross-Complainants and <br> Appellants. | F066327 <br><br> (Super. Ct. No. CU149926) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Merced County. Ronald W. Hansen, Judge.

P. Fateh K. Sahota for Defendants, Cross-complainants and Appellants.

Sean P. McLeod for Plaintiff, Cross-defendants and Respondents.

-ooOoo-

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Facts and parts II. through VI. of the Discussion.

## INTRODUCTION

Edward J. Franks II became a licensed general building contractor in 1995, and operated a sole proprietorship under the name E. J. Franks Construction. During the course of constructing a home for defendants (the Sahotas), Franks incorporated his company under the name E. J. Franks Construction, Inc. (EJFCI). On April 12, 2005, his contractor's license was reissued to the corporation. The trial court rejected the Sahotas' contention EJFCI was prohibited by Business and Professions Code section 7031[1] from pursuing quantum meruit damages against them because it was an unlicensed contractor at the time the construction contract was entered and, therefore, was not licensed "at all times" during the performance of the contract. The Sahotas appeal this ruling and also raise other contentions. In the published portion of this opinion, we hold section 7031 does not apply to the unique situation here because to do so would not advance the statute's goal of precluding unlicensed contractors from maintaining actions for compensation. We reject the Sahotas' other contentions in the unpublished portion of the opinion.

## PROCEDURAL HISTORY

On December 6, 2006, EJFCI filed its complaint in the Merced Superior Court, case No. 149926, to foreclose on a mechanic's lien, and for breach of contract, common counts, and quantum meruit. On or about July 5, 2007, the Sahotas served an answer to the complaint.

---

[1]All further statutory references are to the Business and Professions Code unless otherwise indicated.

Section 7031 provides, in relevant part, as follows: "(a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are individually licensed under this chapter but who fail to comply with Section 7029."

On July 5, 2007, the Sahotas filed a cross-complaint, asserting breach of contract and fraud. Cross-defendants Eddie Franks, E. J. Franks Construction and EJFCI served an answer to the cross-complaint on or about February 22, 2008.

Prior to trial, the court ruled that plaintiff EJFCI was limited to its claims of "quantum meruit or unjust enrichment" after April 12, 2005, for extra work performed at the Sahotas' residence.

Jury trial commenced June 26, 2012. On June 29, 2012, the jury reached a verdict in favor of EJFCI on its complaint and against the Sahotas on their cross-complaint.

On July 20, 2012, the Sahotas sought a new trial, or in the alternative, a remittitur. That same date, the Sahotas also filed a motion for judgment notwithstanding the verdict. Following a hearing on August 17, 2012, the various motions were denied by the trial court.

Judgment was entered in favor of EJFCI and against the Sahotas on September 18, 2012. More specifically, EJFCI was to recover $66,000 in damages and $2,949.15 in costs, for a total judgment of $68,949.15 against the Sahotas.

## FACTS[*]

On September 27, 2004, E. J. Franks Construction entered into a written contract with Bhupinder K. Sahota to build the Sahotas a custom home on their property located in Livingston. The total cost was $962,390.40; construction would take approximately 12 months.

Work began in November 2004. During the construction period, Edward J. Franks II, who was issued a general building contractor license in 1995, incorporated his business. On April 12, 2005, his contractor's license number was reissued to EJFCI.

When the Sahota project was about 90 percent complete, in the spring of 2006, the Sahotas refused to allow Franks to continue or complete the work. They hired another contractor to finish the home.

---

[*]See footnote, *ante*, page 1.

3.

At trial, Franks alleged the Sahotas asked for numerous changes to the original plans, or extra work, after April 12, 2005. That extra work included converting an upstairs closet into a hall bathroom, upgrading the downstairs flooring to marble (v. vinyl & hardwood) and installing a portion of the entry or living room area tile in a diamond (v. square) pattern, upgrading countertops to granite (v. tile), adding a sound barrier in an upstairs room, enclosing an existing attic space to create a living space, additional electrical work that included adding can lights, exterior lights and electrical outlets on the back porch, extending the height of the tile on the shower walls, upgrading the drywall finish from the typical spray-on finish to a custom "imperfectly smooth" wall finish, insulating all interior walls and cavities, upgrading the communication or alarm system to a "smart home" system, adding windows and doors over and above those called for in the plans, relocating a showerhead and adding a sink in the master bath, changing the bathtubs, adding a water softening system and a hot water circulation system with two comfort zones, relocating a built-in BBQ, including gas and water supply lines, and adding shearing to all exterior walls. Franks complied with the Sahotas' numerous requests and expected to be paid for the extra work.

Mrs. Sahota testified that Franks agreed to build a custom home within one year. She was reluctant to make the final payment because Franks' work was slowing down and he did not return her phone calls. She offered testimony in opposition to Franks' regarding some of the work he claimed was extra work. Further, as to the extra work that was performed, she testified Franks agreed to cover the labor costs or make the requested changes without additional compensation. She also indicated that when Franks was terminated from the project, the house was not move-in ready, and another $234,683.30 was spent to finish the home.

The Sahotas alleged there were numerous defects in the construction of their home. They contend as follows: the roof was not installed pursuant to either the plans or the applicable building codes, the roof leaked and caused water damage, the roof ventilation was inadequate, exterior stucco was not installed pursuant to either the plans

4.

or applicable building codes and was cracked and damaged, balconies were improperly constructed allowing for water damage, exterior door frames were not properly constructed, floor tiles were uneven and not in compliance with the building code, water heater platforms were not in compliance with the building code, and propane furnaces in the attic did not conform to the applicable mechanical code.

Franks testified that he believed the subcontractors he employed to perform the work at the Sahotas' residence complied with all applicable building codes. Further, the construction phases were variously approved by the appropriate building inspector officials and, prior to his termination, the Sahotas did not complain of any problems. A number of the defects complained of pertained to items that were installed or modified following his termination from the project or were not maintained properly in the six-year period between his termination and the defense expert's inspections.

EJFCI asked the jury to return a verdict in its favor for the reasonable value of the extra work performed at the Sahotas' residence after April 12, 2005. On the other hand, the Sahotas asked the jury to find in their favor, seeking a total award of $503,582.30 to cover the completion of construction and repair of the construction defects as identified by their expert.

After deliberating approximately 45 minutes, the jury returned a verdict in favor of EJFCI, awarding a total of $66,000 in quantum meruit damages. The jury also found against the Sahotas on their cross-complaint.

## DISCUSSION

### I.      The Applicability of Section 7031

The Sahotas argue that section 7031 is a complete bar to EJFCI's quantum meruit claim and that the trial court erred in allowing the corporation to proceed with the cause of action.

"'Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." [Citation.] To recover in quantum meruit, a party need not prove

5.

the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made."' [Citation.]" (*Miller v. Campbell*, *Warburton*, *Fitzsimmons*, *Smith*, *Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1344.) "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money.' [Citation.]" (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 449.) "'The measure of recovery in *quantum meruit* is the reasonable value of the services rendered *provided* they were of direct benefit to the defendant.' [Citations.]" (*Ibid*.) In other words, quantum meruit is equitable payment for services already rendered.

The Contractors' State License Law (CSLL) (§ 7000 et seq.) is a comprehensive legislative scheme governing the construction business in California. "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" (*Hydrotech Systems*, *Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995.) The CSLL's purpose is to "'protect the public from incompetent or dishonest providers of building and construction services'" and prohibits a contractor who has violated the statute from recovering "'''for the fruits of his labor.'''" (*Pacific Caisson & Shoring*, *Inc. v. Bernards Bros. Inc*. (2011) 198 Cal.App.4th 681, 687.) Pursuant to the CSLL, contractors "must be licensed unless exempt." (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517.)

Section 7031 is directed at precluding unlicensed contractors from maintaining actions for compensation. (See *White v. Cridlebaugh*, *supra*, 178 Cal.App.4th at p. 518; *WSS Industrial Construction*, *Inc. v. Great West Contractors*, *Inc.* (2008) 162 Cal.App.4th 581, 587; *Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1123.)

> "Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor. 'Section 7031 represents a legislative determination that the importance of deterring

6.

unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state.  [Citation.] …'  [Citations.]" (*Hydrotech Systems*, *Ltd. v. Oasis Waterpark*, *supra*, 52 Cal.3d at p. 995; accord, *MW Erectors*, *Inc. v. Niederhauser Ornamental & Metal Works Co.*, *Inc*. (2005) 36 Cal.4th 412, 423.)

We hold section 7031 does not apply here.  At no time was the work on the Sahotas' home performed by an *unlicensed* contractor.  Rather, in this case, the work commenced pursuant to contract by E. J. Franks Construction as a sole proprietor.  When the parties entered the contract, E. J. Franks Construction was a licensed general building contractor, having been issued a license on April 14, 1995.  During the course of the Sahota project, E. J. Franks Construction incorporated and the license issued to and maintained by Franks was reissued to the corporation on April 12, 2005.  Therefore, all of the work accomplished at the Sahotas' residence was performed by a *licensed* contractor, to wit:  the license issued to E. J. Franks Construction in 1995 and valid through April 11, 2005, and the license issued to E. J. Franks Construction, Inc., on April 12, 2005, and valid through April 30, 2015.

Unlike the authorities cited by the Sahotas, this case did not involve a period wherein the contractor was unlicensed or where a license previously issued lapsed during the construction project.  (See *MW Erectors*, *Inc. v. Niederhauser Ornamental & Metal Works Co.*, *Inc*., *supra*, 36 Cal.4th at pp. 419-420 [MW Erectors entered into subcontract before it obtained a structural steel contractor's license]; *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 72-73 [subcontractor MCI did not hold a California building contractor's license when it entered into an agreement with Mauldin-Dorfmeier]; see also *Alatriste v. Cesar's Exterior Designs*, *Inc.* (2010) 183 Cal.App.4th 656, 661 [§ 7031, subd. (b) applies because Cesar's was unlicensed when work began]; *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 849-850, 855 [contractor began work on remodel before becoming licensed, for the first time, several months later]; *WSS Industrial Construction*, *Inc. v. Great West Contractors*, *Inc.*, *supra*, 162 Cal.App.4th at

7.

pp. 585 [WSS "was unlicensed during a period in which it performed services that could only be performed by a licensed contractor," therefore, § 7031 bars recovery].)

Instead, this case involves a *licensed* contractor and a change in business entity status. Proper licensure was in place at all times. Applying section 7031 to the circumstances here would lead to absurd results. Were we to find section 7031 applied, it would effectively preclude licensed sole proprietor contractors from lawfully incorporating and obtaining a reissue of a general contracting license to the new business entity at any time during the construction period. The purpose of section 7031 is to deter *unlicensed* contractors from recovering compensation for their work. It is not intended to deter *licensed* contractors from changing a business entity's status, and obtaining a reissuance of the license to the new entity, during a contract period.

More particularly, this court has previously recognized a distinction between a corporation and an individual as significant for purposes of the CSLL. In *Opp v. St. Paul Fire & Marine Ins. Co.*, *supra*, 154 Cal.App.4th 71, the plaintiff signed a building contract as president of a corporation and misrepresented his own contractor's license number as that of the corporation. The corporation, in fact, was unlicensed. The president sued a surety on a payment bond to recover compensation for work performed, alleging he was the real contracting party and that he had used the corporate name as a fictitious business name. (*Id*. at pp. 72–73.) The trial court concluded the corporation was the contracting party, the president was not a party to the contract, and section 7031 precluded any recovery in favor of the corporation as an unlicensed contractor. The court therefore granted summary judgment in favor of the surety. (*Opp*, at p. 73.)

This court affirmed, stating undisputed evidence showed the corporation, rather than its president, was the contracting party. The court therefore concluded the corporation had acted as a contractor without a license, regardless of who actually did the work. (*Opp v. St. Paul Fire & Marine Ins. Co.*, *supra*, 154 Cal.App.4th at p. 75.) We rejected the plaintiff's argument that a triable issue of fact existed as to whether, despite the fact the contract was in the name of the corporation, the plaintiff individually was also

a party to the contract. We stated that to recognize the individual as a contracting party in those circumstances would, among other things, encourage fraud through the misuse of another person's contractor's license and allow an individual to enjoy the benefits of incorporation while avoiding the burdens by effectively repudiating the existence of the corporation when it was convenient to do so. (*Id*. at p. 76.)

Unlike *Opp*, Franks did not misrepresent his contractor's license by claiming it belonged to a corporate entity. In fact, the corporate entity did not exist when the contract entered into by E. J. Franks Construction and Bhupinder K. Sahota was executed. The corporation was not the contracting party. Here, the corporation did not act "as a contractor without a license." Rather, the corporation—EJFCI—was licensed as of April 12, 2005, and that business entity merely continued the work the sole proprietor began. These distinctions make the holding in *Opp*, that the plaintiff could not recover on a surety bond and was precluded from doing so pursuant to section 7031, inapplicable to this case.

The Sahotas' reliance upon *WSS Industrial Construction*, *Inc. v. Great West Contractors*, *Inc.*, *supra*, 162 Cal.App.4th 581 in support of their position is misplaced. In that case, a subcontractor brought suit against a general contractor. The subcontractor, a corporation, did not hold a contractor's license, but its president was a licensed contractor at all times during the performance of work. The trial court concluded the subcontractor had substantially complied with the license requirement and therefore denied the defendant's nonsuit motion. (*Id*. at pp. 585–586.) The Court of Appeal reversed, holding the corporation could not recover any compensation for the work performed because it was not a licensed contractor at the time of the performance of work, and the president's individual license was irrelevant. (*Id*. at pp. 591, 594 & fn. 8.) The *WSS* court concluded the corporation had failed to satisfy the statutory requirements for substantial compliance (see § 7031, subd. (e)) and therefore was entitled to no recovery. (*WSS Industrial Construction*, *Inc. v. Great West Contractors*, *Inc.*, *supra*, at pp. 595–596.) Significantly, unlike this matter, *WSS* involved a subcontractor who

9.

entered into an agreement with a general contractor at a time when the subcontractor was unlicensed. The subcontractor only became licensed after work commenced on the project. Here, however, rather than enter a contract as an unlicensed contractor, Franks entered into a contract with Bhupinder Sahota as the sole proprietor of E. J. Franks Construction, holding general contractor's license No. 705224. Later, that license was reissued to the corporation.

Unlike the aforementioned authorities, the damages recovered by EJFCI following the jury's verdict do not pertain to either work performed while the corporation was unlicensed or work performed pursuant to the contract Franks, as an individual or sole proprietor, entered into with the Sahotas. Rather, the damages covered only extra work over and above the contract, and only for the period following the reissuance of the general building contractor license from E. J. Franks Construction to EJFCI on April 12, 2005. As the court in *MW Erectors*, *Inc*., stated, section 7031's language stressing "that an *unlicensed* contractor may not sue for compensation … implies that licensed contractors have noncontractual remedies to recover for work not covered by a formal contract. Indeed, parties do sometimes operate without, or beyond the boundaries of, a formal contractual arrangement, under an implicit understanding that the contractor is working on a quantum meruit basis." (*MW Erectors*, *Inc. v. Niederhauser Ornamental & Metal Works*, *Co.*, *Inc.*, *supra*, 36 Cal.4th at p. 428.)

This case does not present a situation in which the court resorted to equitable considerations in defiance of section 7031. Thus, EJFCI was not precluded from recovering quantum meruit damages and the trial court did not err in ruling accordingly.

To the degree the Sahotas' reply brief now contends EJFCI must disgorge its compensation pursuant to section 7031, subdivision (b), we will not consider this argument. Disgorgement was not argued or even mentioned in the Sahotas' opening brief. "[W]e will not address arguments raised for the first time in the reply brief [citation] …." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.)

10.

## II.    The Applicability of Section 7164[*]

Next, the Sahotas argue the trial court erred in permitting EJFCI to proceed on its quantum meruit claims because section 7164 requires a written contract.

Subdivision (a) of section 7164 provides, in pertinent part, that "every contract and any changes in a contract, between an owner and a contractor, for the construction of a single-family dwelling to be retained by the owner for at least one year shall be evidenced in writing signed by both parties."

Here, the extra work or changes were the subject of a defense motion in limine prior to the commencement of jury trial:

> "[THE COURT:]  Motion Number 2.  Okay, this is to preclude introduction of evidence of unsigned changed orders based on violation of B&P Code 7164 and … the *Arya* Case,[2] okay.  [¶] Now, I have yet to see a change order that has any signatures.
>
> "[PLAINTIFF'S COUNSEL]:  That is correct.
>
> "THE COURT:  So there are none.  Factually, it's undisputed.
>
> "[PLAINTIFF'S COUNSEL]:  That is correct.
>
> "THE COURT:  So there is a violation of 7164.  What's Plaintiff's argument?
>
> "[PLAINTIFF'S COUNSEL]:  Plaintiff's argument is that those change orders are the evidence compiled by Mr. Franks to keep track of the extra charges that were incurred on the home.  They're a business record that was produced at Mr. Franks' direction concurrently with the or shortly after the work being done and they're being used—they're being submitted as a business record by which Mr. Franks kept track of the extra work that he did.  They should be—they don't necessarily have to be as a change order.  They're obviously not signed by the Sahotas and they're termed change order but what they are was the record that Mr. Franks kept of the extra work that was done.

---

[*]See footnote, *ante*, page 1.

[2]Referring to *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610.

11.

"THE COURT: Boy, nice try, [counsel]. These are change orders. They're changing the work. They're changing the price. That's the—well, they're changing the price. You know, this isn't just a document regarding an allowance, okay. If it was something that dealt with the allowance items then maybe but these are change orders of—from the plans and specs with additional charges.

"[PLAINTIFF'S COUNSEL]: Well, as to the quantum meruit theory though, Your Honor, they can go come in to show Mr. Franks—through evidence of what Mr. Franks did on the quantum meruit cause of action making the changes at their request, which they promised to pay for, which he provided the benefit to them. These are the records he kept.

"THE COURT: Okay. If he's going on quantum meruit then he has to—on the *Arya* case it says that ….

"[DEFENDANTS' COUNSEL]: Well, as to the reasonable value of the work performed only to the extent the owner would be unjustly enriched if enforcement were denied.

"THE COURT: Right.… [¶] … [¶] … But the Court did say that, you know, in that case it would unjust enrichment should be allowed because she essentially defrauded the Arya … Group.

"[DEFENDANTS' COUNSEL]: But, Your Honor.

"THE COURT: I'm not sure we have that in this case. We don't have someone who's trying to mislead, or I don't have any evidence of it.

"[PLAINTIFF'S COUNSEL]: Your Honor, the measure of recovery quantum meruit is the reasonable value of the services rendered provided they were of direct benefit to the defendant. And that's a quote from *Palmer v. Craig*[3] of California Supreme Court case, that's the basic quantum meruit theory. That's the hornbook.

"And in this case the evidence will show that the defendants asked Mr. Franks to do this work. That Mr. Franks, on their request, had a subcontractor make those changes. Mr. Franks paid the subcontractor for the work, and the Sahotas then refused to pay for the additional work that was necessary to make those changes.

"That's—I mean, that's just straight quantum meruit. They provided the services and the goods. Mr. Franks provided the benefit, paid for it out

---

[3]Referring to *Palmer v. Gregg* (1967) 65 Cal.2d 657.

12.

of his own pocket, passed it on without increase in cost. He didn't add profit and all that stuff to it.

"They asked him to do something. For example, there is going to be evidence to change a closet to a bathroom. He did it. He had to get the plumber back, he had to get the different appliances, put them in there. Rendering the benefit to them by doing what they asked him to do and then they said, oh, we're not paying you for it. In fact, they said, oh, no, you promised to do that for free. So to me that's a straight quantum meruit.

"THE COURT: Well, you have to show unjust enrichment.

"[DEFENDANTS' COUNSEL]: Right. He has to show what the reasonable value of it was. You don't get contractual value.

"THE COURT: Right.

"[DEFENDANTS' COUNSEL]: You get the reasonable value provided it enriched the defendant.

"THE COURT: Right.

"[DEFENDANTS' COUNSEL]: And so—but he doesn't need the change orders. These pieces of paper should be excluded because that is purely, that should be based upon some other evidence, whatever other evidence he can come up with, but these change orders themselves under that B&P Code section do not come in. They're unsigned. They say change order right at the very top.

"THE COURT: I agree. What I'm saying that the exhibits 3 through 8 if they relate to these change orders they would come in because they're the out-of-pocket cost that he incurred.

"[PLAINTIFF'S COUNSEL]: Absolutely.

"[DEFENDANTS' COUNSEL]: That's again, see, that's another question. Assuming he can lay the proper foundation.

"THE COURT: Yeah, right."

The court concluded by stating, "I'm still allowing you to get your quantum meruit evidence in but I'm not allowing evidence of the change orders."

When a contract is otherwise unenforceable, recovery for services rendered may be permitted in a quantum meruit action. (*Long v. Rumsey* (1938) 12 Cal.2d 334, 342; cf.

13.

*Maglica v. Maglica*, *supra*, 66 Cal.App.4th at p. 449 ["As every first year law student knows or should know, recovery in quantum meruit does not require a contract"].) In an action for quantum meruit, a party seeks to recover for the reasonable value of the services rendered, as long as those services were of direct benefit to the recipient. (*Maglica v. Maglica*, *supra*, at pp. 449, 451; see *Chambers v. Kay* (2002) 29 Cal.4th 142, 161; *Palmer v. Gregg*, *supra*, 65 Cal.2d at p. 660.) "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the *thing* or its *equivalent* in money.'" (*Maglica v. Maglica*, *supra*, at p. 449.)

There is no written contract between EJFCI and the Sahotas because Franks failed to advise the Sahotas of the change to his business's entity status during the course of the construction period. As previously indicated, he entered into a written contract with Bhupinder Sahota on behalf of E. J. Franks Construction. Subsequent to the execution of that contract, and during the construction of the Sahotas' residence, Franks' business became incorporated and his license was reissued to EJFCI. Nonetheless, despite a lack of contract between the new entity and the Sahotas, and despite Franks' failure to obtain his clients' signatures on the various change orders that appear as exhibit B to the complaint, EJFCI is not precluded from bringing a quantum meruit cause of action for the services it rendered, and the trial court did not err in this regard. (*Long v. Rumsey*, *supra*, 12 Cal.2d at p. 342; see *Maglica v. Maglica*, *supra*, 66 Cal.App.4th at p. 449.)

*Arya Group*, *Inc. v. Cher*, *supra*, 77 Cal.App.4th 610 does not compel a reversal as the Sahotas argue. *Arya Group, Inc.* held that a contractor's failure to comply with the writing requirement imposed by former section 7164 did not absolutely preclude the contractor from pursuing a breach of contract claim, and the contractor was allowed to "seek to enforce its contract claim … to the extent [the property owner] would otherwise be unjustly enriched as a result of her failure to compensate [the contractor] for the reasonable value of its work on the … construction project." (*Arya Group*, *Inc. v. Cher*,

14.

*supra*, at p. 618.) The court further stated: "If, for whatever reason, failure to compensate the contractor will not result in the unjust enrichment of the owner, there will be no recovery, regardless of what the contractor might have been entitled to collect under a contract which conformed with the requirements of section 7164." (*Ibid*., fn. 4.)

The appellate court in *Arya Group, Inc.* extensively relied upon *Asdourian v. Araj* (1985) 38 Cal.3d 276. In *Asdourian*, the Supreme Court observed that "[g]enerally a contract made in violation of a regulatory statute is void" and the court ordinarily will not aid the enforcement of an illegal agreement or an agreement against public policy. (*Id*. at p. 291.) But the court recognized the rule was not inflexible and there was an exception permitting the enforcement of illegal contracts "to avoid unjust enrichment to the defendant at the expense of the plaintiff. [Citation.]" (*Ibid*.)

The Supreme Court concluded in *Asdourian* that a contractor's failure to comply with the statutory requirement under former section 7159 that home improvement contracts be in writing did not render oral agreements for residential remodeling absolutely unenforceable. The court explained: "In compelling cases, illegal contracts will be enforced in order to 'avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.' [Citation.] '"In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts."' [Citation.]" (*Asdourian v. Araj*, *supra*, 38 Cal.3d at p. 292.) The court stated: "[I]n this factual context, enforcing the oral agreements does not defeat the policy of the statute. The penalty which would result from the denial of relief would be disproportionately harsh in relation to the gravity of the violations." (*Id*. at p. 294.) It found a number of factors supported enforcement: (1) the owners were not part of the class of unsophisticated consumers that the law was intended to protect, (2) misdemeanor penalties provided in the statute were adequate to protect the underlying public policy, (3) the contracts were not malum in se, and (4) the failure to comply with the statute was "perhaps, understandable" because the contractor and the owners had been friends and

15.

had past business dealings. (*Id*. at pp. 292-294.) The Supreme Court determined that the defendants' retention of the benefits without compensation would result in the unjust enrichment of the property owners. (*Asdourian v. Araj*, *supra*, at p. 293.) It concluded that "[i]t will not defeat the statutory policy to allow plaintiff to recover for the reasonable value of the work performed." (*Id*. at p. 292.)

Here, the fact EJFCI did not enter into a written contract for the extra work, or did not obtain signed change orders, does not preclude its recovery in quantum meruit. The Sahotas would be unjustly enriched by the numerous changes and upgrades performed by EJFCI were it prohibited from such recovery. There is significant evidence concerning the extra work performed by EJFCI after April 12, 2005. That evidence was elicited through the testimony of Franks, Joe Perez, Lorenzo Mejia, and Jose Angel Hernandez.

Moreover, the oral agreements between EJFCI and the Sahotas do not defeat the policy of the statute. There is evidence in this record that the Sahotas are not unsophisticated consumers, and denial of relief would be disproportionately harsh in relation to the violation by EJFCI.

In sum, we find no error.

## III. Interpretation of the Written Contract[*]

The Sahotas also argue the trial court's failure to interpret the written contract requires reversal because the alleged extra work was in fact work "specifically addressed in the contract drafted by Mr. Franks."

Significantly, we find that while the Sahotas claim the "trial court incorrectly denied the Sahotas['] request that it determine whether the items [Franks] claimed as 'extras' were in fact beyond the scope of the contract," they have failed to support this factual assertion with an appropriate reference to the record (Cal. Rules of Court, rule 8.204(a)(1)(C)). This court is not required to make an independent search of the record

---

[*]See footnote, *ante*, page 1.

16.

and may disregard any claims when no reference is furnished. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) The allegation is thus rejected on this ground.

## IV. Substantial Evidence in Support of Judgment[*]

Next, the Sahotas contend that EJFCI "failed to present 'substantial evidence' to support the $66,000 award." More specifically, they maintain EJFCI's expert witness's testimony did not constitute substantial evidence because it was based on conjecture and uncertainty. The Sahotas also contend the expert's testimony lacked foundation.

Whether there is sufficient evidence, with or without expert testimony, is a question we review under the substantial evidence test. The substantial evidence rule requires us to "examine the entire record to determine whether there is any substantial evidence, contradicted or uncontradicted, to support the court's factual findings. Where the evidence conflicts or is capable of conflicting inferences, the appellate court will not substitute its deductions for those of the fact finder. [Citation.] Further, … this court will not reweigh evidence, reappraise the credibility of witnesses, or resolve factual conflicts contrary to the trial court's findings, but only decide whether there is substantial evidence to support these findings. [Citation.]" (*Eidsmore v. RBB, Inc.* (1994) 25 Cal.App.4th 189, 195, fn. omitted; see *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1357-1358.) The same is true for a damages award; we affirm if the record, viewed most favorably to the award, discloses substantial evidence. (*Fassberg Construction Co. v Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 746.)

Under Evidence Code section 801,

"If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] … [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the

[*]See footnote, *ante*, page 1.

17.

subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

As provided in Evidence Code section 803, "The court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion."

"The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed. [Citations.] Where an expert bases his conclusion upon assumptions which are not supported by the record, upon matters which are not reasonably relied upon by other experts, or upon factors which are speculative, remote or conjectural, then his conclusion has no evidentiary value. [Citations.] In those circumstances the expert's opinion cannot rise to the dignity of substantial evidence." (*Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135.)

> "An expert opinion has no value if its basis is unsound. [Citations.]… Evidence Code section 801, subdivision (b), states that a court must determine whether the matter that the expert relies on is of a type that an expert reasonably can rely on 'in forming an opinion *upon the subject to which his testimony relates*.' (Italics added.) We construe this to mean that the matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible. [Citations.]" (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.)

"'[I]rrelevant or speculative matters are not a proper basis for an expert's opinion.'" (*Sargon Enterprises*, *Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770.) An expert opinion may not be based on speculative or conjectural data, and an expert opinion that assumes facts contrary to proof destroys the evidentiary value of the opinion. (*Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 338.)

A review of this record establishes expert witness[4] Arnold Kiil's testimony is substantial evidence in support of the jury's award of $66,000 in damages.

---

[4]EJFCI offered Kiil's testimony as expert testimony regarding the reasonable value of the various extra charges claimed. The Sahotas elected not to subject Kiil to voir dire. The trial

18.

Kiil studied civil engineering at Pennsylvania State University after working for his father in the construction business. He became a licensed general building contractor in California and owned his own business in Merced for over 30 years. He estimated he had built about 60 new construction homes during the course of his career.

Kiil was familiar with the Sahotas' residence as he had been in it many times. He offered testimony concerning the reasonable value to convert a closet to a bathroom, to convert a bare attic space to a living space, to insulate all interior walls, to add shearing to the entire exterior of the home, and to relocate a showerhead. As to the reasonable value of the foregoing, Kiil's estimates totaled approximately $34,300. Additionally, Kiil testified that standard spray-on or "orange peel" texture is less expensive than a custom textured surface such as an "imperfectly smooth" texture.

A review of the record does not support the Sahotas' assertions. Kiil's testimony was based upon his 30 years' experience in the construction field, including projecting cost estimates for residential and commercial projects, and his having worked at the Sahotas' home. (Evid. Code, § 801, subds. (a), (b).)

Moreover, the Sahotas were provided with an opportunity to conduct a voir dire examination of Kiil with specific regard to his qualifications as an expert witness on the reasonable value of extra work performed at the Sahotas' residence. They declined to do so. As to the Sahotas' argument that the trial court should have sustained their objections to Kiil's testimony as lacking foundation, we find no abuse of discretion by the trial court in overruling said objections. (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1168 [trial court's determination that expert testimony is admissible is reviewed for abuse of discretion].)

Furthermore, Kiil's testimony was not the only testimony addressing the extra work performed at the Sahotas' home. Franks himself testified as to the various costs

court found Kiil qualified as an expert to render an opinion as to the reasonable value of the extra work performed.

associated with the work performed, as did three subcontractors charged with performing some of the actual work.

In particular, Franks' own testimony was considered by the jury, including: that the flooring cost exceeded the allowance provided for in the contract, the closet-to-bathroom conversion required additional work by the framer, plumber and electrician, the additional cost for the rubber sound barrier was approximately $4,500, the bare attic space conversion to living space involved additional work from framing to finish, the additional lighting and electrical work was performed by A-1 Electric and billed at $2,650, the shower walls were tiled to a greater height at an additional cost of $1,875, the custom interior texture cost was approximately $6,000 to $8,000, the "smart home" communication system was installed for $10,000 and exceeded the contract price that called for an alarm system, windows and doors were added that were not provided for in the plans at an additional cost of approximately $1,555, certain changes were made that required extra work by the plumbing contractor (including additional bathroom fixtures) for an additional cost of approximately $4,200, installing insulation to all interior wall spaces was an additional $3,000, the shearing of all exterior walls was approximately $9,000, and laying the tile flooring in a diamond pattern with a border was an additional $2,348.

Franks' testimony was supported in part by the testimony of three subcontractors. Joe Perez performed the extra work pertaining to the heightened shower wall tile and shower upgrades. He billed $1,875 for the extra work and was paid that sum by Franks. Moreover, Perez performed extra work in the form of laying tile downstairs in a diamond pattern and adding a decorative border. The cost of that extra work was $2,348. Lorenzo Mejia performed additional electrical work to accommodate extra can lights, exterior lighting, and exterior appliance outlets. He billed a total of $2,280 for the extra work performed. Jose Angel Hernandez testified he performed about three separate framing changes over and above the job he originally bid, including building closets and adding

20.

shearing to the exterior of the home. Although he did not remember the costs associated with the extra work, he was paid for that work by Franks.

During closing argument, counsel for EJFCI addressed the reasonable value of the extra work performed and referenced the testimony in support thereof. During that argument, counsel's specific references to the values he contended should be assigned to that work totaled between $55,515 and $68,515, depending upon whose testimony the jury credited as to a specific value.

As to the Sahotas' passing contention that the trial court abused its discretion in allowing exhibit 116 to be admitted, it is rejected because the contention is utterly lacking in reference to legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 9:21, p. 9-6.)

It is the jury's role to determine which evidence to credit and which to disregard. (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) As a reviewing court, we may not "reweigh evidence, reappraise the credibility of witnesses or resolve factual conflicts contrary to the [jury's] findings …." (*Eidsmore v. RBB, Inc.*, *supra*, 25 Cal.App.4th at p. 195.) Because Kiil's opinions are not based on unsupported factual assumptions or sheer speculation and conjecture, we reject the Sahotas' argument that those opinions must be rejected. Moreover, viewing the evidence in the light most favorable to the judgment, it is plain the $66,000 damage award is supported by substantial evidence.

## V. The Sahotas' Breach of Contract Claim[*]

Finally, the Sahotas urge this court to "reverse the trial court's decision finding Mr. Franks did not breach the construction contract where [they] presented substantial evidence in support of their claim for construction defects." Specifically, they allege both that Franks "presented insubstantial evidence to counter" their evidence, and that

---

[*]See footnote, *ante*, page 1.

21.

they presented "uncontroverted" evidence.  Whether alleging their evidence was uncontroverted, or that the opposing evidence was insufficient, we are not persuaded by the Sahotas' arguments.

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts.  [Citation.]  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a [judgment].  [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see *Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, 44 Cal.App.4th at p. 1204.)  "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citations.]' [Citations.]" (*Evje v. City Title Ins. Co.* (1953) 120 Cal.App.2d 488, 492.)  Evidence credited by the trial court will be found sufficient to support a judgment unless it was "'unbelievable *per se*'" or such that "'no reasonable person could believe the testimony.'" (*Ibid.*; cf. *Kircher v. Atchison*, *T. & S.F. Ry. Co.* (1948) 32 Cal.2d 176, 183 [testimony of a single witness sufficient to support judgment unless it was "wholly unacceptable to reasonable minds"].)

> "If conflicting inferences may be drawn regarding a material fact the appellate court is required to draw the inference favorable to the judgment. 'Even if this court were of the opinion that that determination was wrong, it would not have the power to substitute its deductions for those of the trial court.  For, as has so often been said, when opposing inferences may reasonably be drawn from the facts in a case, the findings of the trial court will not be set aside.' [Citations.]" (*Doupnik v. General Motors Corp*. (1990) 225 Cal.App.3d 849, 868.)

If the trier of fact determined the party with the burden of proof at trial failed to meet that burden, our review becomes a question of whether the evidence compels a finding in favor of the appellant as a matter of law.  (*Shaw v. County of Santa Cruz*

22.

(2008) 170 Cal.App.4th 229, 279.)  In which case, the question would then be whether "the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'  [Citation]"  (*Ibid*.)

Notably, the argument asserted is inaccurately stated.  The trial court did not make findings; rather, the jury was the trier of fact.  With regard to the Sahotas' breach of contract claim, the jury expressly found that while the parties entered into a contract, the Sahotas neither performed "all or substantially all of the significant things [it] required them to do," nor were they excused from having to do so.

Furthermore, there is substantial evidence in the record to support the jury's verdict.  The Sahotas' contentions are nothing more than requests for this court to reweigh the evidence and to reweigh the credibility of the witnesses.  This we will not do.

The jury plainly accorded more weight to the testimony of Franks and expert Kiil than it did to the testimony of Michael Jundt, the Sahotas' construction defect expert witness.  It is the jury's exclusive province to determine the credibility of witnesses.  (*Evje v. City Title Ins. Co.*, *supra*, 120 Cal.App.2d at p. 492.)  The testimony proffered in opposition to Jundt's testimony was not unbelievable per se, nor was it testimony that no reasonable person could believe.  (*Ibid*.)  Moreover, the jury could have been persuaded by Franks' testimony, Kiil's testimony, or a combination thereof.  Both testified in contradiction to the testimony offered by Jundt in support of the Sahotas' claims.  The testimony of a single witness is sufficient to support the judgment, and the testimony of both Franks and Kiil support the judgment against the Sahotas on their claim for breach of contract.  (*Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, 44 Cal.App.4th at p. 1204; see also *Kircher v. Atchison*, *T. & S.F. Ry. Co.*, *supra*, 32 Cal.2d at p. 183.)

Further, while Jundt may be more educated than Kiil, that is not a reason to reverse the jury's findings below.  It was the jury's responsibility to make credibility determinations and weigh the expert testimony.  (*Foreman & Clark Corp. v. Fallon*

(1971) 3 Cal.3d 875, 890; *County of Monterey v. W. W. Leasing Unlimited* (1980) 109 Cal.App.3d 636, 646.) It did so and found against the Sahotas.

The evidence concerning the various construction defects alleged by the Sahotas was plainly in conflict. The testimony offered by Jundt and Kerry Wolf was contradicted by testimony offered by Franks, Kiil, and John Grissom. Evidentiary conflicts are also the exclusive province of the jury. (*Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, 44 Cal.App.4th at p. 1204; *Doupnik v. General Motors Corp.*, *supra*, 225 Cal.App.3d at p. 868; *Evje v. City Title Ins. Co.*, *supra*, 120 Cal.App.2d at p. 492.)

The Sahotas' evidence was neither "uncontradicted and unimpeached," nor "of such a character and weight" as to preclude judicial determination that it was insufficient. (*Shaw v. County of Santa Cruz*, *supra*, 170 Cal.App.4th at p. 279.)

In conclusion, drawing all reasonable inferences from the jury's verdict, we find there is sufficient evidence to support the verdict as the correct one. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 635.)

## VI.    Request for Judicial Notice[*]

In their reply brief, the Sahotas request this court take judicial notice of the Contractors State License Board Web site and, particularly, the following: http://www.cslb.ca.gov/Contractors/MaintainLicense/ChangeBusinessEntity.asp. Their request ignores basic rules of appellate procedure. California Rules of Court, rule 8.252(a)(1) mandates requests for judicial notice must be made by a separate formal noticed motion pursuant to rule 8.54. By including the request as a part of the reply brief, versus a separately noticed motion, EJFCI was afforded no opportunity to address the request. Moreover, the information contained in the request for judicial notice relates to information not presented to or considered by the trial court. "Generally, '"when reviewing the correctness of a trial court's judgment, an appellate court will consider only

---

[*]See footnote, *ante*, page 1.

24.

matters which were part of the record at the time the judgment was entered." [Citation.]' [Citations.]  It is a fundamental principle of appellate law that our review of the trial court's decision must be based on the evidence before the court at the time it rendered its decision.  [Citations.]  The [Sahotas] have not cited any exceptional circumstances that would justify a deviation from this rule in this appeal." (*California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 803; see *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1395, fn. 5 [request for judicial notice improperly raised for first time in reply brief].)  Furthermore, the information on the Web site in 2014 is not relevant to any licensing requirements or procedures in place when this dispute arose, nearly a decade earlier.  (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1 [to take judicial notice, matter must be relevant to a material issue]; *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1064, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)

For the foregoing reasons, the request for judicial notice is denied.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to EJFCI.


_____

PEÑA, J.

WE CONCUR:


_____

POOCHIGIAN, Acting P.J.


_____

SARKISIAN, J.†


---

†Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.